IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


James K. Owens,                          :

                Plaintiff            :        Civil Action 2:11-cv-267

      v.                                :        Judge Graham

Commissioner of Social Security,         :        Magistrate Judge Abel

             Defendant            :


**REPORT AND RECOMMENDATION**


     Plaintiff James K. Owens brings this action under 42 U.S.C. §423 for review

of a final decision of the Commissioner of Social Security denying his application for

supplemental security income benefits.  This case is now before the Magistrate

Judge for a report and recommendation on the disposition of this matter.

     <u>Summary of Issues</u>.  Plaintiff Owens filed an application for supplemental

security income in September 2006, alleging that he became disabled on August 15,

2006, at the age of 43, by spinal stenosis, fatigue, and depression.  The

administrative law judge ("ALJ") found that Owens retains the ability to perform a

limited range of light, unskilled work and a full range of sedentary, unskilled work.

Owens argues that the decision of the Commissioner denying benefits should be

reversed because the ALJ gave inadequate weight to the opinions of Plaintiff's

treating physician and improperly assessed his credibility.

**Procedural History**.  Plaintiff James K. Owens filed his application for supplemental security income on September 20, 2006, alleging that he had been disabled since August 15, 2006 by spinal stenosis, fatigue, and depression.  (R. 9.) The application was denied initially and upon reconsideration.  Owens sought a *de novo* hearing before an administrative law judge.  On September 1, 2009, an administrative law judge held a hearing at which Owens, represented by counsel, appeared and testified.  (R. 9.)  An impartial medical expert and a vocational expert also testified at the hearing.  On November 27, 2009, the administrative law judge issued a decision finding that Owens was not disabled within the meaning of the Act.  (R. 9-18.)  On January 31, 2011, the Appeals Council denied Owens' request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1.)  Owens thereupon filed this appeal.

**Age, Education, and Work Experience**.  Owens was born on October 25, 1962. (R. 41.)  He attended high school through the twelfth grade, and then joined the Army, where he served for four years, receiving an honorable discharge.  Owens later obtained a GED.  (R. 44-45.)  He had most recently worked as the manager of a discount store in Kentucky, but when his mother suffered a stroke in 1999 he moved to Columbus to care for her.  (R. 46, 60.)  Owens testified that he broke his knee and ankle in an accident in 2000, and owing to subsequent surgery on his cervical spine and rehabilitation had not been able to work since.  (R. 46-48.)  He had previously worked as a restaurant manager and construction worker.  (R. 16, 181.)

**Plaintiff's Testimony**.  The administrative law judge summarized Owens' testimony at the hearing as follows:

> The claimant testified that he is disabled and unable to work primarily because of spinal stenosis causing severe pain in his back and neck that limits him at all exertional levels.  The claimant rates his pain as being on average, 5 out of 10 with 10 being the highest degree, and he says some days his pain is at a 10.  He represented that his pain keeps him from sitting for more than 60 minutes, standing for more than 45 minutes at a time, or walking more than a block.  He said that he can only sit for about 45 to 60 minutes before he must get up and walk around to relieve his pain and discomfort.  He acknowledges that he is able to cook simple meals, wash dishes, grocery shop for himself, fold laundry and place it in and take it out of the machine, make his bed, clean his room, dust, and watch his friends' children which has included feeding and dressing them. He stated that he is able to independently bathe and dress himself and attend to his own personal hygiene.  For recreation he watches television, reads, plays cards, and enjoys board games.  For pain relief he takes only over-the-counter Tylenol, and he states that his prescription medication causes drowsiness.

(R. 13-14, citations omitted.)

In the interview for the initial field office disability report accompanying his application for benefits, Plaintiff reported that he "can stand 45 min then must sit, can sit for 60 min then must change positions, could walk 2 blocks then must rest". (R. 172.)  He also reported that he "can walk just a couple of steps and then my legs give out & never know when this will happen".  (R. 179.)  Regarding housework, he claimed that he could help out in the kitchen, but had to sit while doing so, and that he could fold laundry but could not lift clothes or go down steps to launder them. (R. 179.)

In conjunction with his application for benefits, Plaintiff completed symptoms and functional reports.  (R. 189.)  He stated that he felt constant pain,

with weakness in his joints, legs, back, and hands.  Plaintiff reported pain from his spinal stenosis spreading to his legs, arms, small of back, and base of skull.  (R. 190.)  He also complained of having to sit or lie frequently, having difficulty maintaining his balance, and feeling constant fatigue.  (R. 192.)  In addition, Plaintiff reported that he had difficulty kneeling, squatting, or bending, because his legs and back lacked strength, and that he could not reach over his head because of neck and spinal pain.  (R. 200.)  In a disability report for the appeal of the ALJ's decision, Plaintiff reported that his condition had worsened.  (R. 239.)  He stated that the pain in his legs, back, and spine had grown more severe since March 2007. (R. 240.)

### Medical Evidence of Record.

Although the administrative law judge's decision fairly sets forth the relevant medical evidence of record, this Report and Recommendation will summarize that evidence in some detail.  Although Plaintiff underwent psychological examination, Plaintiff's assignments of error relate entirely to his physical impairments.

### Physical Impairments.

Scott Elton, M.D.  On November 13, 2011, prior to Plaintiff's alleged date of onset, he was admitted to Riverside Methodist Hospital with a diagnosis of multiple thoracic stenosis with spinal cord compression.  (R. 561.)  Examination revealed that Plaintiff had "essentially no sensation to pin prick below the waist."  (R. 561.)  Dr. Elton performed a posterior cervical laminectomy from T4 through T12.  (R. 562-63.)

On October 31, 2003, Plaintiff was admitted to Riverside Methodist Hospital with a diagnosis of C4 spinal stenosis with myelopathy. Dr. Elton performed an anterior C4 vertebrectomy with allograft fusion of C3 to 5 and Codman plate fixation of C3 to 5. (R. 270.) The admission record indicated that Plaintiff had previously undergone a C3-4 discectomy for spinal cord compression, and that imaging showed a broad spondylitic bar at the superior aspect of C4, which severely compressed the spinal cord. (R. 270.)

On January 14, 2004, Dr. Elton wrote a letter to Dr. Beyer, Plaintiff's physician, which reported that Plaintiff had returned that day for follow-up from surgery. Plaintiff reported continued substantial pain in his shoulders, arms, and legs, and pain in his lower back. Dr. Elton found Plaintiff's cervical and thoracic incisions well healed, with 5/5 bilateral strength in biceps, triceps, and lower extremities, and 4/5 strength in both right and leg intrinsic hand muscles. (R. 264.) He reported informing Plaintiff that "[h]e clearly has evidence of myelopathy, most likely based on his significant prior spinal cord compression. I let him know that I believe it is unlikely that he will recover, but he is still in too early in the recovery phase from his most recent cervical surgery to know for certain." (R. 264.)

On April 14, 2004, Dr. Elton wrote a letter to Dr. Beyer, which reported that Plaintiff had returned that day for follow-up from surgery. Dr. Elton reviewed Plaintiff's cervical spine x-rays, finding that "bone has healed and fused quite well." (R. 263.) However, Plaintiff reported worsening of hand grasp, and Dr. Elton's examination revealed atrophy of both arms. Dr. Elton, "concerned that [Plaintiff's]

5

symptoms are progression of his cervical myelopathy", recommended a cervical CT myelogram, as well as EMG and nerve conduction studies of his extremities, to determine if continued compression of the spinal cord existed. (R. 263.)

On June 18, 2004, Dr. Michael J. Meagher, M.D., sent a letter to Dr. Elton informing him that he had seen Plaintiff that day in his absence. Dr. Meagher reported that there was no record that the myelogram or nerve studies were ever undertaken. Neurological examination revealed that Plaintiff walked without difficulty, although bent forward. (R. 262.) Dr. Meagher reviewed April 2004 MRIs, which showed adequate thoracic and cervical decompression, with no severe lumbar spinal stenosis. He found some degenerative changes at the top end, and some relative stenosis at the upper portion of the spine just above the decompression. (R. 262.)

Jerry Bowman. Mr. Bowman, Plaintiff's brother-in-law, completed a third-party function report on October 25, 2006. (R. 201-08.) Bowman reported that he saw Plaintiff at least once per week, and that he had observable difficulty in lifting, bending, and walking without falling. Plaintiff frequently had to sit to take breaks from standing to avoid falls, and had to sit down while dressing himself. (R. 203-04.)

John B. Beyer, M.D. Dr. Beyer is Plaintiff's primary care physician, and saw him from at least October 2002 onward. He placed, and continued, Plaintiff on pain medication, including Percocet, for his stenosis, seeing him at least seventy times between 2002 and 2008. His treatment notes were largely records of Plaintiff's

6

pharmaceutical regimen, with periodic notes that Plaintiff's paraspinal muscles were "firm". (R. 457-73.)

On December 4, 2006, Dr. Beyer filled out a form physical capacity evaluation at the request of a state disability determination agency. (R. 416-18.) He diagnosed Plaintiff with lumbar and thoracic disc disease with spinal stenosis, as well as cervical disc disease. Dr. Beyer opined that Plaintiff's condition originated from a January 1999 fall and spinal injury, and said that despite numerous medications he continued to suffer "marked paraspinal muscle spasm from neck to sacrum". (R. 417.) He concluded that Plaintiff's neck and lower back pain affected his ability to lift and bend, and that he could not do even moderate physical exertion. Dr. Beyer limited him to part-time light work for three to four hours per day. (R. 418.)

On May 9, 2007, Dr. Beyer filled out another form physical capacity evaluation at the request of a state disability determination agency. (R. 444-45.) He opined that Plaintiff's medications and pain regimen permitted him to perform normal activities of daily living with "tolerable pain", but that his neck and back pain had produced substantial muscle weakness, precluding physical work and permitting only part-time employment. (R. 445.)

On January 16, 2008, Dr. Beyer filled out a form physical capacity evaluation. (R. 454-56.) He opined that Plaintiff could carry no more than ten pounds occasionally, and five pounds frequently, that Plaintiff could stand and walk no more than four hours in an eight-hour day, and that he could sit for no more than two hours in a workday. (R. 454.) Dr. Beyer also stated that Plaintiff would

need to lie down twice during a workday, and could sit, stand, or walk for no more than 45 minutes at a time. He limited Plaintiff to rare twisting, stooping, bending, or crouching, with only occasional climbing of stairs and no climbing of ladders. (R. 455.) Dr. Beyer opined generally that Plaintiff could perform such vocational tasks for less than three days per week, and less than four consecutive weeks per month, and that his limitations had been present since November 2001. (R. 456.) Dr. Beyer gave no response to the form question "[w]hat medical findings support the limitations described above?" (R. 455.)

On July 16, 2008, Dr. Beyer completed a form physical capacity evaluation. (R. 478-80.) The evaluation was generally identical to the January 2008 form, except that Dr. Beyer added a notation that Plaintiff's "physical condition is deteriorating gradually". (R. 480.) In addition, Dr. Beyer listed "disc problems both cervical thoracic and lumbar" as medical findings supporting the limitations described. (R. 479.)

On September 9, 2009, in conjunction to Plaintiff's appeal of the administrative law judge's opinion, Dr. Beyer completed a form medical questionnaire. (R. 252.) He stated that the necessity for a one and a half to two hour nap per day, as Plaintiff had represented, was a reasonable side effect from his medications, Oxycodone and Robaxin. (R. 252.)

Riverside Methodist Hospital. On February 19, 2007, Plaintiff went to the hospital for neck pain, complaining that he had fallen off a ladder and landed on snow and ice. He complained of neck and back pain, as well as numbness and

tingling in his arms and legs. (R. 422.) Physical examination demonstrated that Plaintiff had a full range of motion bilaterally without pain. His grip strength was equal in the upper extremities, but weak. His lower extremity strength was equal. (R. 422.) An MRI was taken of Plaintiff's cervical spine, which showed multilevel degenerative changes in the cervical spine, but no cord signal abnormality. (R. 428.) It demonstrated mild central canal stenosis overall, with mild-moderate right foraminal stenosis. (R. 427.)

On January 15, 2008, Plaintiff went to the hospital complaining of swelling and pain for the past several days in his right elbow. He stated that the swelling was causing pain and numbness in his right forearm. (R. 540.) The examining physician found full hand grasp with full range of motion of the digits, as well as full range of motion in the elbow and shoulder.

On January 22, 2008, Plaintiff went to the hospital complaining of chest pain and shortness of breath. (R. 532.) He was diagnosed with pneumonia and treated with antibiotics. (R. 533.) Physical examination demonstrated normal motor strength in all extremities. In response to Plaintiff's complaints of a tearing sensation in his back, a CT of his chest was taken; this demonstrated multilevel spondylosis of the thoracic spine similar to a CT examination of February 2006, with no definite central canal stenosis. (R. 534.)

On April 2, 2008, Plaintiff went to the hospital complaining of nausea, vomiting, and diarrhea, with abdominal pain. (R. 518-20.) He reported chronic pain from spinal stenosis. (R. 519.) Examination demonstrated a full range of

motion of upper and lower extremities.  (R. 519.)

On August 7, 2008, Plaintiff went to the hospital complaining of nausea, vomiting, and diarrhea, with abdominal pain.  Upon review of symptoms, Plaintiff reported chronic lower back pain, but no problems with ambulation.  (R. 504.) Examination revealed some muscle wasting, mostly at the calves and lower leg.  His strength was normal.  (R. 505.)

On October 19, 2008, Plaintiff went to the hospital after having tripped, fallen, and suffered head trauma with brief lack of consciousness.  (R. 482.)  On admission, Plaintiff had a CT of head and cervical spine which did not reveal any acute abnormality.  MRIs of the cervical, thoracic, and lumbar spine did not show any acute fracture.  No evidence of cervical spinal stenosis was found, but x-rays demonstrated multilevel degenerative spondylosis in the thoracic spine.  (R. 489.) Examination revealed significant foraminal stenosis of C6-C7, possible myelomalacia of T7 and T8, and no acute abnormality on the lumbar spine. Plaintiff complained of right leg pain.  After physical and occupational therapy, in which Plaintiff "did well", he was released to be discharged home.  (R. 482.)

In June 2009, Plaintiff went to the hospital for chest pain.  (R. 564-65.) While at the hospital, he received a thoracic spine x-ray, which noted mild thoracic dextroscoliosis, and anterior fusion hardware in the cervical spine.  No acute process was found.  (R. 564.)  He also received a lumbar spine x-ray, which found partial ankylosis of the superior sacroiliac joints, but no acute findings.  (R. 564.) Plaintiff also had a CT scan performed on his neck, which found extensive

multilevel degenerative disc disease with foraminal stenosis at two levels and mild central canal stenosis at two levels.  It found no acute abnormality, and "[o]verall, no change since 10/19/2008."  (R. 564.)

Jerry McCloud, M.D.  On November 20, 2006, Dr. McCloud, a state agency physician, conducted a form physical residual functional capacity assessment based upon the record.  (R. 408-415.)  Dr. McCloud found that Plaintiff retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, and to push or pull to an unlimited extent.  (R. 409.)  He found no postural, manipulative, visual, communicative, or environmental limitations, and concluded that Plaintiff's symptoms were attributable to a medically determinable impairment.  (R. 411-13.)  However, he stated that the severity and duration of Plaintiff's symptoms was disproportionate to that expected, and that his "allegations of limitation are inconsistent with the objective medical findings.  Allegations of severity of condition partially credible."  (R. 413.)

Leslie Green, M.D.  On July 17, 2007, Dr. Green, a state agency physician, conducted another physical residual functional capacity assessment based upon Plaintiff's record.  (R. 446-453.)  Dr. Green found that Plaintiff retained the ability to occasionally lift 20 pounds, frequently lift ten pounds, sit, stand or walk for about six hours in an eight-hour workday, and push and pull to an unlimited extent.  (R. 447.)  He opined that Plaintiff should never climb ladders, ropes, or scaffolding.  (R. 448.)  Dr. Green found no postural, manipulative, visual, communicative, or environmental limitations, aside from avoiding concentrated exposure to hazards.

11

(R. 448-50.) He concluded that Plaintiff's symptoms were attributable to a medically determinable impairment, and that such impairment could reasonably be expected to produce the alleged symptoms. (R. 451.) However, Dr. Green concluded, "[t]he claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 451.)

Paul Gatens, M.D. Dr. Gatens was the testifying medical expert at Plaintiff's hearing before the administrative law judge. Dr. Gatens reviewed Plaintiff's records, and questioned Plaintiff briefly. (R. 72-73.) He identified spinal stenosis, myelopathy, and cervical degenerative joint disease among Plaintiff's impairments documented by objective medical evidence. (R. 74-76.) Based upon Plaintiff's record, Dr. Gatens opined that Plaintiff should be able to lift twenty pounds occasionally, and ten frequently, although he could only stand or walk for four to five hours in an eight-hour workday, with breaks every 45 minutes to an hour. (R. 76-77.) Dr. Gatens also opined that Plaintiff should be able to sit for six to eight hours in a workday, as long as he could change positions every 45 minutes to an hour to alleviate stiffness. (R. 77.) He found no limitations in fine or gross manipulation. (R. 78.)

**Administrative Law Judge's Findings**. The administrative law judge found that Owens had severe impairments of spinal stenosis, status-post cervical and lumbar laminectomies, inguinal hernia, a history of alcohol abuse, and a history of marijuana abuse. (R. 11.) He concluded that although Owens had demonstrated pain, muscle spasm, and some limitation in range of motion, his musculoskeletal

12

impairment did not meet the criteria of a listed spinal disorder, and that the evidence demonstrated that he had never exhibited significant motor loss with muscle weakness and sensory and reflex loss following his surgery. (R. 12.) He noted that the medical expert had testified that Owens did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. 12.) The ALJ determined specifically that Owens retained the residual functional capacity to sit for 45 minutes at a time for a total of 6 hours in an 8 hour workday, and that he could stand and walk for a total of 45 minutes at a time for no more than 4 hours total in an 8 hour workday. Owens required the ability to change positions every 45 minutes. He could lift 10 pounds frequently and 20 pounds occasionally. He was unable to climb stairs, ladders, ropes, or scaffolding, or to work around unprotected heights, hazardous machinery, or drive commercially. (R. 12.)

At the hearing, the vocational expert testified that, given Owens' restrictions, he could not perform any of his past work. (R. 81.) However, a reduced number of light, unskilled jobs existed which Owens could perform, along with a full range of sedentary unskilled work. (R. 83.) Accepting that testimony, the ALJ determined that Owens was not disabled. (R. 17.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. ..."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It means "'more than a scintilla.'" *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments**. Plaintiff argues that the ALJ committed reversible error in refusing to give controlling weight or at least "great weight" to the opinions of Dr. Beyer, and that the ALJ failed to correctly assess his credibility.

**Analysis**.

In his opinion, the ALJ found:

> The opinion expressed by Dr. Beyer in regards to the claimant's degree of functional limitation and employability is accorded no weight because Dr. Beyer did not reference specific medical findings within the record and/or explain how those medical findings supported the opinion expressed on a function by function basis as to the severity of the claimant's impairments. Dr. Beyer references the presence of pain and spasms but provides no diagnostic or clinical support evidencing marked or extreme neurological deficits or loss of muscle strength, range of motion, sensation, or reflexes. Furthermore, the final responsibility for determining whether a claimant is "disabled" or "unable to work" is an area reserved to the Commissioner.

14

(R. 15-16.)

Dr. Beyer was Plaintiff's treating physician from 2002 onward. A treating doctor's opinion is entitled to greater weight than that of a physician who has examined a plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). This is because a treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Furthermore, the Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.*

There is a rebuttable presumption that a treating physician's opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, for the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff argues that Dr. Beyer's form evaluations repeatedly and specifically indicated severe limitations in his ability to perform the physical requirements of full-time employment, and that his condition continued to worsen as time went on. He states that the ALJ should have taken proper account of these findings of his long-time treating physician, in light of the length and extent of the treating relationship. Finally, Plaintiff argues, Dr. Beyer's opinions were supported by the extant objective medical evidence concerning Plaintiff's repeated spinal surgeries and demonstrations on CT and MRI scans of degenerative spondylosis.

As the Commissioner points out, however, evidence supporting a diagnosis of severe impairment is not the same thing as evidence supporting physical and vocational limitations said to be *caused* by that impairment. The ALJ determined

that Plaintiff's spinal stenosis was a severe impairment. (R. 11.) The limits put forth in Dr. Beyer's repeated form functional capacity assessments, however, were not supported by Beyer's own records – which consisted largely of a transcript of Plaintiff's medication refills – or by evidence from Plaintiff's repeated hospitalizations or other examinations that Plaintiff's severe impairment did, in fact, render him unable to walk reliably or sit for more than 45 minutes at a time. The ALJ cited to numerous hospital records postdating Plaintiff's 2004 surgeries which referred only to mild or moderate cervical degeneration, and which described normal range of motion and ability to ambulate. (R. 14.) Despite his treating relationship, the opinions Dr. Beyer expressed did not have sufficient evidence to support their severity, and it was not error for the ALJ to refuse to give them controlling weight.

Plaintiff argues also that the ALJ failed to correctly assess his credibility:

The ALJ noted that Mr. Owens testified and/or reported that he was able to cook simple meals, wash dishes, grocery shop for himself, fold laundry and place it in and take it out of the machine, make his bed, clean his room, dust, and watch his friends' children including feeding and dressing them. Mr. Owens was able to independently bathe and dress himself and attend to his own personal hygiene. The ALJ cites Mr. Owens' testimony and [certain exhibits] to support his statement. However, review of these exhibits reveals no support for the ALJ's contentions. [...]

Mr. Owens' testimony and reports have consistently shown that he is only able to do simple activities for short periods of time due to his impairments. Therefore, these daily activities (some of them not even being on a daily basis) would certainly not contradict Mr. Owens' own statements regarding his physical limitations. It is clear that the ALJ misstated and ignored many of Mr. Owens' statements. Therefore, this claim should be remanded for proper consideration of Mr. Owens'

17

actual activities as stated in [the record] and through his own
testimony.

(Doc. 11 at 31, citations omitted.)

An ALJ "is not required to accept a claimant's subjective complaints and may
... consider the credibility of a claimant when making a determination of disability."
*Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 469, 476 (6th Cir. 2003), citing *Walters v.
Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's credibility
determinations about a claimant are to be given great weight. However, they must
also be supported by substantial evidence. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d
532, 542 (6th Cir. 2007). "Discounting credibility to a certain degree is appropriate
where an ALJ finds contradictions among medical reports, claimant's testimony,
and other evidence." *Walters*, 127 F.3d at 531, citing *Bradley v. Sec'y of Health &
Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

It was not improper for the ALJ to consider Plaintiff's ability to engage in
activities of daily living in assessing the credibility of his claims to be unable to
work. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), citing
*Walters*, 127 F.3d at 532. Plaintiff objects largely to the ALJ's characterization of
such activities as cooking simple meals and folding laundry as "certainly not
[supporting] a finding that he can perform work for 8 hours a day".[1] However, the

---

[1] Plaintiff also argues that there existed no evidence to support the ALJ's
contentions that Plaintiff "would do laundry in and take it out of a washing
machine" or that Plaintiff could "grocery shop for himself". (Doc. 11 at 30-31.)
However, Plaintiff's brother-in-law, Jerry Bowman, noted in his third-party
statement that "I've seen him do laundry, but he was unable to carry the laundry

ALJ did not find that Plaintiff was capable of employment as a cook or launderer, but that such "daily activities contradict the claimant's own statements as to his physical limitations and are not credibly restricted to the extent one would expect of an individual alleging the type of severe, disabling pain and symptomatology the claimant alleges." (R. 15.) The ALJ also did not substantively misrepresent Plaintiff's testimony, whether or not he cast it in a light unfavorable to Plaintiff's claims. Another reviewer could have come to a contrary decision concerning Plaintiff's credibility, but the decision of the ALJ here must be upheld if the findings and inferences reasonably drawn from the record are supported by substantial evidence. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff also objects to the ALJ's determination that his allegations that the drowsiness caused by his medication was so severe that it rendered him unable to work were not supported by any evidence in Plaintiff's treatment records of complaints about excessive drowsiness or attempts to eliminate or ameliorate these effects. He contends specifically that Dr. Beyer's objective records of frequent adjustments or alterations of his medications support these claims, and that the testifying medical expert conceded that Plaintiff's alleged tiredness was reasonable given his medications. Plaintiff is correct that Dr. Beyer's records, for their part,

---

basket" and that Plaintiff does his own grocery shopping, which took a long time "because he walks so slowly and must use the shopping cart for support". (R. 203-04.)

show changes in his medications, though these do not directly support Plaintiff's claims as to the severity of their effects.[2]  However, at the hearing, Dr. Gatens testified that the effects of Plaintiff's medications "depends on how he's taking them.  I mean, he could adjust that by cutting down Percocet during the day." (R. 79.)  Furthermore, Plaintiff's extensive treatment records are again devoid of complaints as to drowsiness so substantial as to require extensive naps during the day, and such allegations are thus essentially based on his own testimony, which the ALJ otherwise found exaggerated.  Substantial evidence existed to support the ALJ's credibility determination as to Plaintiff's drowsiness, as with his ability to physically perform vocational tasks.  The ALJ thus did not err in this finding.

Conclusions.  For the reasons set forth above, I find that there is no basis to overturn the decision of the Administrative Law Judge.  Accordingly, I **RECOMMEND** that Plaintiff's objections be **OVERRULED**, and that this case be **DISMISSED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto.  28 U.S.C.

---

[2]  Plaintiff also notes that Dr. Beyer submitted a questionnaire after the hearing which stated that Plaintiff's medications would support his claims of drowsiness and required naps, to which the ALJ made no reference.  (Doc. 11 at 32-33.)  He does not actually claim that the ALJ's failure to address this document is itself grounds for remand.  In any case, however, it is evident that the ALJ would have assigned the same weight to this opinion by Dr. Beyer as he did to the others.

§636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge